IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASMINE HAYNES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. CIV-14-1194-M |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Jasmine Haynes[1] brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for Supplemental Security Income benefits (SSI) under the Social Security Act. The Commissioner has answered and filed the transcript of the administrative record (hereinafter TR. ____). For the reasons set forth herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

### I. PROCEDURAL HISTORY

On September 26, 2011, Plaintiff's mother filed an application for supplemental security income benefits (SSI) on behalf of Plaintiff, then a child under 18 years old, alleging disability beginning August 1, 2011. (TR. 56). The application was denied on initial

---

[1] When she first applied for social security benefits, Plaintiff was a minor, and her mother filed the application on her daughter's behalf. Plaintiff has reached the age of majority, however, and Plaintiff filed this appeal on her own behalf.

consideration and on reconsideration at the administrative level. At Plaintiff's request, the Administrative Law Judge (ALJ) held a *de novo* hearing on April 16, 2013. (TR. 73-99). At the hearing, Plaintiff appeared with counsel. She and her mother testified in support of the application. The ALJ issued his decision on May 17, 2013, finding that Plaintiff was not disabled. (TR. 56-68). The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. (TR. 4-10). Plaintiff then filed this judicial appeal.

## II. DETERMINATION OF DISABILITY FOR CHILDREN

### A. Statutory basis

The Social Security Act provides that "[a]n individual under the age of 18 shall be considered disabled … if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).

### B. Regulatory Framework

The Commissioner applies a three-step sequential inquiry to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a). At the first step, the ALJ determines whether the child has engaged in substantial gainful activity. *Id.* at § 416.924(b). If not, the inquiry continues to the second step for consideration of whether the child has a severe determinable impairment or impairments. *Id.* at § 416.924(c).

If a child has a medically determinable severe impairment, the ALJ must determine at the third step of the sequential evaluation whether such impairment meets, medically equals, or functionally equals a listed impairment. *Id.* at § 416.924(d). A child is not disabled if the impairment does not meet the twelve-month duration requirement or if the impairment does not meet, medically equal, or functionally equal the listings. *Id.* at § 416.924(d)(2).

A child's impairment "causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings[.]" *Id.* at § 416.924(d); *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 Part B.

A child's impairment functionally equals a listed impairment if the impairment or combination of impairments is "of listing-level severity … *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.] *Id.* at § 416.926a(a), (d). The six functional domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id.* at § 416.926a(b)(1).

A child has a "marked" limitation in a domain if a child's impairment seriously interferes with the child's "ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(2)(i). A marked limitation may also be found if the child has a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on the comprehensive standardized test designed to measure a

particular domain. But the Commissioner cannot rely solely on the test results. *Id.* at §§ 416.924a(a)(1)(ii), 416.926a(e)(2). If the interference is "very serious[]", the limitation is considered "extreme." *Id.* at § 416.926a(e)(3).

In assessing whether a child has "marked" or "extreme" limitations, the ALJ considers the functional limitations from all medically determinable impairments, including any impairments that are not severe. *Id.* at § 416.926a(a). The ALJ must consider the interactive and cumulative effects of the child's impairment or multiple impairments in any affected domain. *Id.* at § 416.926a(c). The ALJ is required to compare how appropriately, effectively and independently the child performs activities compared to the performance of children of the same age who do not have impairments. *Id.* at § 416.924a(b).

## III. THE ADMINISTRATIVE DECISION

In addressing Plaintiff's disability application, the ALJ followed the three-step sequential evaluation process described in 20 C.F.R. § 416.924. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her application date. (TR. 59). At step two, the ALJ concluded that Plaintiff has the following severe impairments: borderline intellectual functioning, migraines, narcolepsy and status post bilateral ankle stabilization. (TR. 59). At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B. (TR. 60).

The ALJ assessed Plaintiff's functional limitations and determined she has less than marked limitation in acquiring and using information, (TR. 62); less than marked limitation

in attending and completing tasks, (TR. 63); less than marked limitations in interacting and relating to others, (TR. 64); no limitation in moving about and manipulating objects, (TR. 65); no limitation in the ability to care for herself, (TR. 66); and less than marked limitation in health and physical well-being. (TR. 67).

## IV. ISSUES PRESENTED

Plaintiff contends the ALJ "improperly rejected the opinions of Dr. Coleman," her treating neurologist, resulting in findings of less than marked limitations in the functionally equivalent domains—findings which, according to Plaintiff, are not supported by substantial evidence. Plaintiff further contends the ALJ failed to properly evaluate her credibility and the credibility of her mother, both of whom testified at the administrative hearing.

## V. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## VI. ANALYSIS

### A. Failure to Consider Neurological Evidence

In determining whether Plaintiff's impairments meet or medically equal one of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P,

Appendix 1 Part B, the ALJ gave "great weight" to the opinion of Plaintiff's treating physician, Dr. Barry Mitchell, as expressed in a letter dated November 14, 2011:

> Jasmine Haynes has been a patient of mine over the last several years. She has current medical problems of migraine headaches, narcolepsy, seasonal allergies and joint pain. She is otherwise physically fit. She is mentally normal for age. She can interact on a normal basis.

(TR. 61, 425).

For purposes of determining Plaintiff's functional limitations in the six functional domains, the ALJ gave "great weight" to the findings of a non-examining agency psychologist, Edith King, Ph.D. (TR. 62). In a Childhood Disability Evaluation form dated January 19, 2012, Dr. King stated that Plaintiff has "less than marked limitation in health and physical well-being" and in attending and completing tasks (TR. 452, 451). The ALJ relied solely on Dr. King's opinion. (TR. 67). Dr. King, in turn, relied on Dr. Mitchell's letter of November 14, 2011, and on a single October 6, 2011 medical report from Plaintiff's treating neurologist, Dr. Mario T. Coleman. (TR. 454, 452, 383-384). Neither Dr. King nor the ALJ took into account all of the medical records from Dr. Mario T. Coleman, who treated Plaintiff for migraine headaches and narcolepsy over a period of two years. In fact, it was Dr. Mitchell, Plaintiff's primary treating physician, who referred Plaintiff to Dr. Coleman for evaluation and treatment of her frequent headaches. (TR. 375).

On June 30, 2011, Dr. Coleman noted Plaintiff's history of frequent headaches sometimes accompanied by alterations in alertness and "staring spells." Plaintiff was

fourteen years old at that time and had reportedly suffered from headaches since she was four or five years old. Plaintiff also complained of excessive daytime somnolence. Dr. Coleman prescribed Topiramate in an effort to prevent her migraine headaches. (TR. 375-377).

Dr. Coleman also addressed Plaintiff's excessive daytime somnolence, her night terrors, and occasional difficulty in sleeping; deferring a diagnosis of narcolepsy until after Plaintiff had undergone a sleep study. During the month between her first and second visit, Plaintiff reported only three headaches. (TR. 378-380).

In September 2011, Dr. Coleman reviewed the results of the sleep study and determined the results were consistent with narcolepsy. Dr. Coleman noted Plaintiff's headaches had improved with the use of Topiramate. (TR. 381). To help with Plaintiff's narcolepsy, Dr. Coleman prescribed Concerta. (TR. 382).

In October 2011, Dr. Coleman found Plaintiff's headaches to be much better controlled. After taking Concerta, Plaintiff reported better sleep and more alertness during the day, but she also reported that she still occasionally fell asleep during the day or had difficulty focusing on the task at hand. In response, Dr. Coleman increased the dosage of Concerta. (TR. 383-384).

During her May 2012 follow up appointment, Plaintiff reported consistent, severe headaches two to three times per week. (TR. 476). She was also experiencing tingling in her hands and fingertips that Dr. Coleman noted could be a side effect of Topiramate. He discontinued Topiramate and prescribed SUMAtriptan Succinate as

needed for headaches and added Amitriptyline in place of Topiramate for prevention of headaches. (TR. 476-477).

By her next visit in September 2012, Plaintiff's problems with her hands had resolved. She reported better control of her headaches and better alertness during the day. Dr. Coleman reported she had "done quite well." (TR. 474).

But by December 2012, Plaintiff's initial improvement in overall headaches after switching from Topiramate to Amitriptyline had proved to be temporary. After having decreased in frequency to one or two per week, Plaintiff's headaches had slowly increased to three or four per week. Plaintiff experienced extreme fatigue toward the end of the day, and extreme restlessness when sleeping (TR. 472). Dr. Coleman continued Plaintiff's medications, but increased the dosage of Concerta. (TR. 473).

At her March 2013, follow up appointment, Plaintiff was still experiencing migraines two to three times per week. She was also experiencing joint and muscle pains as well as fatigue. She reported Concerta helped with the daytime somnolence, but that its beneficial effects wore off by noon. (TR. 469). Dr. Coleman stated that all of Plaintiff's complaints could be related to narcolepsy. (TR. 470). Dr. Coleman increased the dosage of both Concerta and Amitriptyline. (TR. 470).

Dr. Coleman's medical records demonstrate the use of several different medications intended to control Plaintiff's headaches. But after initial improvement in number and severity of headaches, the efficacy of the medication would prove to be temporary and ultimately Plaintiff's headaches would return.

The ALJ discussed only Dr. Coleman's medical record from October 6, 2011. The ALJ summarized the medical record noting particularly that Plaintiff's headaches were better controlled since starting Topiramate and she reported more alertness during the day. The ALJ also noted a normal EEG taken on August 2, 2011. (TR. 67).

The ALJ erred in failing to consider Dr. Coleman's medical records as a whole. It is well established that an ALJ may not pick and choose to discuss only the parts of uncontradicted medical evidence favorable to a finding of nondisability. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). The ALJ's failure to fully consider the evidence from Dr. Coleman could have impacted the ALJ's "less than marked limitations" in the domains of Health and Physical Well-being and Attending and Completing Tasks. His disregard of Dr. Coleman's records begs the question whether the ALJ's decision is supported by substantial evidence. On remand, the ALJ should consider and discuss the impact of all of Dr. Coleman's medical records.

### B. Credibility Analysis

Plaintiff contends the ALJ erred in his credibility findings of both her testimony and that of her mother. This point is well taken as to the ALJ's analysis of Plaintiff's testimony. In fact, other than boilerplate language that "the statements concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not entirely credible," (TR. 61), there was no analysis of Plaintiff's credibility.

The ALJ did not analyze the credibility of Plaintiff's mother. In fact, despite the ALJ's statement that he had "considered all of the relevant evidence in the case record,"

(TR. 60-61), he neither mentioned that Plaintiff's mother testified at the administrative hearing, nor referred to the substance of her testimony.

Ms. Dawn Renee Haynes testified that her daughter was having trouble at school, that she had difficulty making friends, and that she is unable to focus on her schoolwork. She also testified that Plaintiff has difficulty completing assignments, even though her assignments are modified to accommodate Plaintiff's borderline intellectual functioning. (TR. 94-99).

"The ALJ is not required to make specific written findings of credibility *only if* the written decision reflects that the ALJ considered the testimony." *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) (internal quotation and citation omitted) (emphasis added). "'[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.'" *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). On remand, the ALJ should consider all the evidence including the testimony of witnesses.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **December 8, 2015**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on November 24, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE